# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br>　v.<br><br>Robert Ellis Hastings,<br><br>　　　　　Defendant. | Crim. No. 11-25 (1) (RHK/FLN)<br><br>**MEMORANDUM OPINION<br>and ORDER** |

This matter is presently before the Court on Defendant's motion seeking post-conviction relief pursuant to 28 U.S.C. § 2255. (Docket No. 90.) Defendant is asking the Court to vacate his sentence in this case for a variety of reasons. Defendant's § 2255 motion will be DENIED.

## I. BACKGROUND

On September 13, 2010, Defendant was driving a white Honda on a highway near Rochester, Minnesota. A sheriff's department investigator named Michael LaVigne was following Defendant, because Defendant had been seen driving away from a house where a bank robbery suspect was believed to be present. According to LaVigne, Defendant abruptly signaled a lane change, and cut across the highway from the far left lane to an exit ramp. LaVigne was in an unmarked van at the time, so he called another law enforcement officer named Wallace to help him stop Defendant's car. After Wallace and LaVigne stopped the car, a passenger exited the car and ran away. Wallace chased the passenger, while LaVigne approached Defendant and handcuffed him. LaVigne then heard a gunshot, and he went to investigate. He discovered that Wallace had chased down the passenger, and after the passenger displayed a knife, Wallace had shot and killed him. The passenger turned out to be the suspected bank robber, David Panquin.

After the shooting, Defendant was taken into custody. His car was detained because of its

connection to the bank robbery, i.e., because the suspected bank robber had fled from the car. The following morning, September 14, 2010, a search warrant for the car was obtained and executed. Two guns were found in separate bags in the trunk of the car – a rifle that was later determined to belong to Panquin, and a handgun. The next day, (September 15, 2010), a police investigator attempted to question Defendant, but he declined to talk. A few days later, however, Defendant initiated a conversation with police investigators, and at that time he admitted that he had possessed the handgun that was found in the white Honda, and his DNA would be on that gun.[1]

Defendant was later indicted in federal court on a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He later filed several motions seeking to suppress much of the evidence that the Government intended to use against him. An evidentiary hearing was held before Magistrate Judge Franklin L. Noel on March 23, 2011. After that hearing, the Magistrate Judge recommended that Defendant's suppression motions should be denied, (Docket No. 39), and that recommendation was later adopted, (Docket No. 46).

On June 10, 2011, Defendant entered into a plea agreement, by which he agreed to plead guilty to being a felon in possession of a firearm. (Docket No. 48.) The plea agreement stipulated that Defendant's plea would be "conditional," and he would reserve the right to appeal the legality of the traffic stop, his detention after the stop, and the search of the white Honda. Under the terms of the plea agreement, Defendant acknowledged that he is an Armed Career Criminal for purposes of the Armed Career Criminals Act, ("ACCA"), and he was therefore subject to a minimum sentence of fifteen years, and a maximum sentence of life in prison. The plea agreement also included a

---

[1] Defendant acknowledged this admission in his subsequent plea agreement. (Docket No. 48, p. 2, ¶ 2.)

stipulation regarding various sentencing factors, but it was expressly acknowledged that those stipulated sentencing factors would not be binding on the Court.

On September 7, 2011, Defendant was sentenced to 180 months in prison – the mandatory minimum under the ACCA for an Armed Career Criminal convicted of being a felon in possession of a firearm. See 18 U.S.C. § 924(e). Defendant subsequently filed an appeal in which he challenged the rulings on several of his suppression motions. The Court of Appeals described those challenges as follows: "(1) there was no probable cause or reasonable suspicion to justify the traffic stop, (2) the period between [Defendant's] initial detention and the time he was charged with driving with a suspended license was unreasonably long, and (3) the firearms were not within the scope of the vehicle search warrant." United States v. Hastings, 685 F.3d 724, 727 (8th Cir. 2012), cert. denied, 133 S.Ct. 958 (2013). The Court of Appeals considered and rejected all of Defendant's claims on the merits, and his conviction and sentence were affirmed.[2]

Defendant's current § 2255 motion indicates that he is challenging only his sentence, and not his conviction. He describes the relief he is seeking as follows: "Vacate and reverse my sentence/conviction, remove the ACCA inhancement [sic] and resentence me under 922(g)(1) only." (Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence," [Docket No. 90], ["Section 2255 Motion"], p. 14.) Defendant's Reply Brief confirms, more explicitly, that he is challenging only his sentence. There he states: "I am not requesting that my sentence be overturned completly [sic] all I am requesting is to be resentenced for the gun only. I think that is

---

[2] Under the terms of Defendant's plea agreement, he agreed to waive his right to challenge his sentence on appeal if the sentence did not exceed 210 months. Because Defendant was sentenced to the mandatory minimum of 180 months, the plea agreement precluded him from challenging his sentence on appeal.

3

only fair in light of the grounds that were raised." (Defendant's "Reply," [Docket No. 95], p. 4, [emphasis added].)

## II. DISCUSSION

### A. Claims Pertaining to Conviction

Even though Defendant is challenging only his sentence, his § 2255 motion presents numerous claims that pertain only to his conviction, and have no bearing on his ACCA sentence enhancement. Indeed, ten of the thirteen grounds for relief listed in Defendant's motion, (Grounds One through Ten), pertain only to his conviction. Only three grounds, (Grounds Eleven through Thirteen), pertain to Defendant's sentence. As noted above, Defendant suggests that "it is only fair" to re-sentence him "in light of the grounds that were raised" in opposition to his conviction. He apparently believes that merely raising a sufficient quantum of challenges to his conviction will somehow bolster his challenges to his sentence. However, the federal criminal justice system simply does not work that way.

Because Defendant has clearly indicated that he is challenging only his sentence, the first ten grounds listed in his motion, challenging only his conviction, are superfluous. Nevertheless, each of those first ten grounds has been reviewed, and the Court finds all of them to be meritless.

#### (i) Ground One: Counsel's failure to investigate witness

In Ground One, Defendant contends that he was deprived of his constitutional right to effective assistance of counsel, because his attorney failed to challenge a witness who testified before the grand jury. Defendant alleges that the witness, David Casler, was not credible, because he has a criminal record. This claim is wholly meritless, because Defendant has not shown – or even suggested – that Casler actually gave any false testimony before the grand jury. Furthermore,

Defendant has failed to explain how he thinks his attorney could have opposed or counteracted Casler's testimony before the grand jury. Finally, Defendant has not explained why he believes his case would have had a different outcome if his attorney had somehow been able to challenge Casler's veracity.

### (ii) Ground Two: LaVigne's allegedly false testimony

In Ground Two, Defendant contends that Michael LaVigne "fabricated" his testimony about the way in which Defendant was driving shortly before he was stopped by LaVigne and Wallace. According to Defendant, "[a]nyone who has ever operated a motor vehicle or has any common sense at all" would know that LaVigne's testimony must have been false, because it is impossible to abruptly swerve across two lanes of a highway in order to get to an exit ramp. (Defendant's memorandum in support of his § 2255 motion, [Docket No. 91], [hereafter "Defendant's Memorandum"], p. 2) Defendant further contends that even though "anyone" would know that LaVigne's testimony must have been false, his attorney should have called an expert witness to disprove LaVigne's explanation of the traffic stop.

The Court initially notes that it simply makes no sense to suggest that Defendant's attorney should have presented an expert witness to disprove testimony that "anyone" supposedly would have known was false. If it was that obvious that LaVigne's testimony was "fabricated," there would be no need to call an expert to disprove it. Furthermore, Defendant has not identified any expert witness who would have provided the type of evidence that he thinks his attorney should have introduced. Defendant certainly has not established that his suppression motions would have been decided differently if his attorney had employed the defense that Defendant is now (belatedly) advocating.

5

### (iii) Ground Three: Racial profiling

Defendant next faults his attorney for not advancing a "racial profiling" argument, because LaVigne had observed that Defendant's car was registered to someone with a Hispanic name. However, Defendant's attorney had no grounds to make a "racial profiling" argument, because there is no evidence suggesting that Defendant is Hispanic, or that Defendant's race played any role in LaVigne's pursuit of his car. Instead, the record shows that LaVigne followed Defendant's car, because it was driven away from the putative residence of a bank robbery suspect. Furthermore, the record supports this Court's determination, and the Court of Appeals' concurrence, that Defendant's "traffic stop was justified" simply because of the way he was driving. Hastings, 685 F.3d at 728.

### (iv) Ground Four: Authority to detain car

Ground Four of Defendant's motion asserts that "Police lacked authority to detain the car I was driving because it was not used in any crime." Section 2255 Motion, p. 9. Defendant has not offered any factual or legal support for this claim.[3] Furthermore, the Court of Appeals has already determined that the police properly detained the car, and did not allow Defendant to simply drive it away, because (a) they had reason to believe the car might have been connected to a bank robbery, and (b) the car was directly related to a shooting, (namely Wallace's shooting of Panquin), which was still under investigation. See id. at 729 ("for at least two independent reasons – the investigations of the officer-involved shooting and of the bank robbery – law enforcement personnel would not have permitted [Defendant] to drive the Honda away").

### (v) Ground Five: Probable cause for car search warrant

---

[3] Defendant's motion indicates that Ground Four is further explained in the memorandum accompanying the motion, but in fact, the memorandum merely repeats the one sentence description of the claim set forth in the motion itself. (Defendant's Memorandum, p. 4.)

In Ground Five, Defendant advances a brief and conclusory argument that the search warrant for the white Honda was issued without probable cause. This argument was raised by Defendant's attorney, and it was expressly rejected during the pre-trial motion proceedings. See Report and Recommendation dated May 23, 2011, [Docket No. 39], pp. 19-20, ("[t]he Court finds that the facts contained in the application for a search warrant... provide probable cause that evidence of the bank robbery would be found in Defendant's vehicle.") Defendant has not shown any reason to revisit this issue.

### (vi) Ground Six: Unlawful detention

Defendant next argues that his conviction should be vacated, because he was unlawfully detained from 9:00 p.m., when he was apprehended by the police, until 4:00 a.m. the next morning, when he was charged with driving with a suspended license. Defendant acknowledges that this argument has been raised before, but he contends that it has never been adjudicated by this Court or the Court of Appeals. Defendant fails to mention, however, that this issue was not actually decided, because it was found to be non-dispositive. (See id. at pp. 15-16; see also Hastings, 685 F.3d at 728-29 ("[w]e assume without deciding that law enforcement officers unlawfully detained Hastings prior to approximately 4:00 a.m. on September 14.... [w]e conclude, however, that Hastings has not demonstrated a nexus between this period of detention and the discovery of the firearms,... [and] [a]s a result, even if the initial duration of the detention was unlawful, the district court did not err by denying [Defendant's] motion to suppress the firearms") (emphasis added). Defendant's current iteration of his "unlawful detention" argument is rejected for the reasons previously explained by the Magistrate Judge and the Court of Appeals.

### (vii) Ground Seven: "Reasonable suspicion" for traffic stop

On direct appeal, Defendant argued that the traffic stop that precipitated his indictment was barred by the Fourth Amendment, because he had not actually violated any Minnesota traffic law. According to Defendant, LaVigne <u>mistakenly</u> believed that Defendant had made an unsafe lane change, but in fact, "his driving was reasonably safe within the meaning of the statute" he allegedly violated. The Court of Appeals rejected this argument, ruling that even if LaVigne was mistaken about Defendant's traffic law violation, there was no Fourth Amendment violation, because the mistake "'was an objectively reasonable one.'" <u>Hastings</u>, 685 F.3d at 727, quoting <u>United States v. Martin</u>, 411 F.3d 998, 1001 (8th Cir. 2005) (quoting <u>United States v. Smart</u>, 393 F.3d 767, 770 (8th Cir. 2005). Defendant now contends that the Eighth Circuit's ruling on this issue was wrong, and should be disregarded, because it allegedly conflicts with rulings from other circuits. (Defendant's Memorandum, pp. 5-7.) This argument is plainly unsustainable, because a district court cannot ignore – and certainly cannot overturn – a ruling by the Eighth Circuit Court of Appeals.

**(viii) Ground Eight: Eighth Circuit's application of the "plain view doctrine"**

Defendant's eighth ground for relief challenges another ruling by the Court of Appeals. On direct appeal, Defendant claimed that his Fourth Amendment rights were violated by the seizure of the firearms that were found in his vehicle when the search warrant was executed. The Court of Appeals rejected Defendant's contention that the seizure was unconstitutional because the incriminating nature of the firearms was not readily apparent. <u>See</u> <u>Hastings</u>, 685 F.3d at 729 ("we agree with the district court that the plain-view doctrine permitted seizure of the firearms even though the search warrant did not list them as items to be seized," because "[t]hat doctrine permits an officer to 'seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating nature is immediately apparent, and the officer

8

has a lawful right of access to the object'") (quoting United States v. Darr, 661 F.3d 375, 379 (8th Cir.2011), quoting United States v. Bustos–Torres, 396 F.3d 935, 944 (8th Cir.2005))). Defendant contends that the Eighth Circuit's ruling on the seizure of his gun is erroneous, because he – i.e., Defendant himself – allegedly did not know anything about the incriminating nature of the firearms that were found in the vehicle. (Defendant's Memorandum, pp. 7-8.) This argument must be summarily rejected, because Defendant is once again asking this Court to review and overturn a ruling by the Court of Appeals.[4]

### (ix) Ground Nine: Alleged illegal search

In Ground Nine, Defendant refers to a transcript of an interview that apparently was conducted in the early morning hours after Panquin was shot by Wallace. The interview was conducted by two law enforcement officials who were investigating the shooting. They asked Defendant several questions about the events of the previous evening, and at one point during the interview, one of the investigators asked Defendant whether he had seen Panquin put a couple bags into the white Honda. Defendant equivocated, saying he did not know what Panquin might have put in the car.[5] Defendant has inferred from the investigators' questions that someone must have searched the white Honda before the search warrant for that car was issued. He asserts that "[t]his

---

[4] The Court also notes that Defendant's own alleged ignorance about the incriminating nature of the firearms found by police is irrelevant, because the applicability of the plain-view doctrine depends upon whether the incriminating nature of the evidence was immediately apparent to the law enforcement officials who seized the evidence. See Hastings, 685 F.3d at 729 ("for the incriminating nature of the firearms to be immediately apparent, the officers only needed 'probable cause to associate the [firearms] with criminal activity'") (citation omitted) (emphasis added).

[5] A copy of the transcript of the interview cited by Defendant is attached to the memorandum in support of his § 2255 motion, (Docket No. 91-1), and the inquiry related to the bags is at p. 3 of the transcript, (Docket No. 91-1, p. 21 of 32).

evidence establishes a nexus between the unlawful detention and the firearms and also proves taint." (Defendant's Memorandum, p. 10.)

This claim for relief is not sustainable for several reasons. First, the investigators oblique questions about whether any bags were put into the white Honda does not establish that the car actually was searched before the search warrant was issued. The questions could have been based on pure speculation. It is also possible that some law enforcement officer saw someone put something in the car while it was under surveillance.[6]

More importantly, however, even if the car had been searched before the warrant was issued, it does not necessarily follow that the incriminating evidence found in the car would have been suppressed.

> "When police obtain a warrant based, in part or in whole, on information gleaned through an illegal search, the government may still use the evidence under the independent source doctrine if the government proves 'both (1) that the decision to seek the warrant was independent of the unlawful entry – i.e., that police would have sought the warrant even if the [unlawful] entry had not occurred – and (2) that the information obtained through the unlawful entry did not affect the magistrate's decision to issue the warrant.'"

United States v. Wright, 739 F.3d 1160, 1173 (8th Cir. 2014), quoting United States v. Khabeer, 410 F.3d 477, 483 (8th Cir.2005). Both of the criteria cited in Wright would undoubtedly be met in this case. First, given Panquin's status as a bank robbery suspect, and the fact that he was killed immediately after fleeing from the white Honda, the police certainly would have obtained a search warrant for the car, with or without a prior unauthorized search. And second, Defendant explicitly asserts that "their [sic] is no mention of any bags in the search warrant application," (Defendant's

---

[6] The house where the car had been parked before Defendant was stopped by the police had been under police surveillance. (Transcript of Evidentiary Hearing, [Docket No. 26], pp. 29-31, 36, 39.)

Memorandum, p. 9), which means that the search warrant was not based on any information obtained from a prior unauthorized search. Therefore, the independent source doctrine would be applicable here.[7]

Furthermore, even if the white Honda was searched before the warrant was issued, and even if that search violated the Fourth Amendment, (which are two very dubious assumptions), the Court still could not find any meaningful "nexus between the unlawful detention and the firearms," as Defendant argues in Ground Nine of his motion. Defendant still has not shown that the duration of his detention had any bearing on the discovery of the firearms.

### (x) Ground Ten: Alleged lack of Miranda warning

Defendant's full explanation of his tenth ground for relief, repeated verbatim and in its entirety, is as follows: "Miranda warnings were not given by police before taken [sic] a statement who later gave testimony on government's behalf." (Defendant's Memorandum, p. 10.) Defendant cannot possibly be granted any relief on this claim, because it is virtually unintelligible. He apparently believes that some incriminating statement that he made to some law enforcement official(s) should have been suppressed, because he was not given a "Miranda warning" before he made the statement. However, Defendant has not identified the statement at issue, he has not explained the context in which the statement was made, he has not shown that the statement actually was incriminating, and most significantly, he has not shown that the Government actually used the statement in any way, or intended to use the statement in any way. Therefore, Defendant has failed

---

[7] The Court also notes that the police probably would have been able to search the car even without a warrant, pursuant to the inventory search exception. See United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011) ("[t]he inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search").

to establish that the statement at issue, (whatever it might have been), should have been suppressed.

B.  Claims Pertaining to Sentence

Defendant has filed three additional claims challenging his sentencing under the ACCA.  All of those claims are unavailing.

### (i) Ground Eleven: ACCA sentencing allegedly improper under Descamps

In Ground Eleven, Defendant contends that he should not have been sentenced under the ACCA, because his prior offenses cannot be treated as "violent felonies" in light of the Supreme Court's decision in Descamps v. United States, 133 S.Ct. 2276 (2013).  This claim fails for several reasons.

First, the Supreme Court has not held that Descamps is retroactively applicable on collateral review, and this Court is not aware of any other federal court that has applied Descamps to a case that became final on direct appeal before Descamps was handed down.  See Hoskins v. Coakley No. 4:13 CV 1632 (N.D.Ohio 2014), 2014 WL 245095 at *5 ("there is no suggestion that the Supreme Court intended Descamps to be applied retroactively to cases which already became final after appeals").

Second, Defendant has failed to explain how Descamps could affect any of the prior convictions that cause him to be an Armed Career Criminal.  The Supreme Court held in Descamps that when a sentencing court evaluates how a prior offense should be treated for ACCA purposes, the court should look at the statutory elements of the offense, rather than the specific factual circumstances surrounding the defendant's conviction.  See United States v. Abbott, __ F.3d __ (3rd Cir. 2014), 2014 WL 1328178 at *2 ("[w]hen deciding whether a previous conviction counts as a 'violent felony or a serious drug offense' under the ACCA, a sentencing court may look only to the

elements of a defendant's prior conviction, not 'to the particular facts underlying those convictions'") (citing <u>Descamps</u>, 133 S.Ct. at 2283, quoting <u>Taylor v. United States</u>, 495 U.S. 575, 600 (1990)).  Defendant has made no effort to explain how this ruling could have any possible bearing on any of the prior convictions that make him an Armed Career Criminal.  Defendant offers a conclusory assertion that "[t]he sentencing court determined my prior convictions qualified [for ACCA sentencing] based on what I did or attempted to, and not solely on the launguage [sic] of the statute of the conviction and this is contrary to the holding in <u>Descamps</u>."  (Defendant's Memorandum, p. 11.)  However, Defendant has offered <u>nothing</u> to support that assertion. Furthermore, the Court's determination of Defendant's ACCA status was <u>not</u> based on an evaluation of the particular circumstances of Defendant's past offenses, but rather, Defendant was found to be an Armed Career Criminal based on his own candid admissions – both in his plea agreement and in open court – that his extensive criminal record includes numerous convictions that count as violent felonies under the ACCA.

Finally, as Respondent has correctly pointed out <u>at least</u> three of Defendant's prior convictions plainly constitute "violent felonies" for ACCA purposes, <u>based solely on the statutory elements of the offense</u>.  Defendant's prior ACCA convictions include four common law robbery offenses under North Carolina law. (uncertified Transcript of plea hearing, p. 23.)  Defendant contends that those common law robbery offenses do not "have as an element the use, attempted use or threatened use of physical force against the person of another."  (Defendant's Memorandum, p. 10.) That assertion is incorrect. Under North Carolina law, "conviction on the common-law robbery charge qualifies as a predicate violent felony under 18 U.S.C. § 924(e)(2)(B)(I), as common-law robbery plainly 'has as an element the use, attempted use, or threatened use of physical force against

13

the person of another.'" United States v. Bowden, 975 F.2d 1080, 1082 (4th Cir. 1992), cert. denied, 507 U.S. 945 (1993), citing State v. Herring, 370 S.E.2d 363, 368 (1988).  Thus, even in light of Descamps, Defendant has at least four prior offenses that make him an Armed Career Criminal for federal sentencing purposes.

### (ii) Ground Twelve: Alleyne allegedly requires a jury determination

Ground Twelve of Defendant's § 2255 motion is based on the Supreme Court's decision in United States v. Alleyne, 133 S.Ct. 2151 (2013).  Relying on Alleyne, Defendant contends that "past convictions are elements that should be submitted to a jury because they increase the penalty for a crime."  (Section 2255 Motion, p. 28, "Ground Twelve.")  This argument fails for at least three reasons.

First, Alleyne, like Descamps has not been held to be retroactively applicable on collateral review.  Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013); In re Payne, 733 F.3d 1027, 1029-30 (10th Cir. 2013).  See also Porter v. United States, No. 3:10-CR-206-D-12 (N.D.Tex. 2014), 2014 WL 803666 at *2 ("[t]he United States Court of Appeals for the Fifth Circuit has held that Alleyne did not establish a new rule to be applied retroactively on collateral review; thus, Petitioner cannot rely on it in this section 2255 action"), (citing In re Kemper, 735 F.3d 211, 212 (5th Cir. 2013)).

Second, as Respondent has pointed out, "Alleyne left intact the rule that enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury."  United States v. Abrahamson, 731 F.3d 751, 752 (8th Cir. 2013) (per curiam), citing Alleyne, 133 S.Ct. at 2160, n. 1, cert. denied, 2014 WL 1124916 (Mar. 24, 2014).  Thus, it is simply not true that, for ACCA purposes, Alleyne requires

prior convictions to be determined by a jury. See United States v. Goodwin, 541 Fed.Appx. 851, 852 (10th Cir. 2013) (unpublished opinion) ("Alleyne expressly left in place the preexisting rule that a judge may (as here) find the fact of a prior conviction").

Third, even if Allyene were applicable here, the requirements of that decision would be met by reason of Defendant's guilty plea. At Defendant's plea hearing, he expressly acknowledged that he is an Armed Career Criminal because of the numerous prior violent felony convictions on his criminal record. (uncertified Transcript of plea hearing, pp. 23-24.) Defendant's plea would satisfy the requirements of Alleyne, even if there were not an exception for prior convictions. See United States v. Heard, __ F.3d __ (11th Cir. 2014), 2014 WL 1282724 at *2 ("any fact that increases the mandatory minimum is an 'element' of the charged crime that must be proven beyond a reasonable doubt," citing Alleyne, but "[i]n the context of a guilty plea, such an element may be established when the defendant admits the facts in question through a guilty plea or otherwise").

### (iii) Ground Thirteen: Wisconsin battery conviction

In Defendant's thirteenth (and final) ground for relief, he contends that one of his many prior convictions should not be treated as a violent felony for ACCA purposes. The conviction at issue was identified in the indictment, (Docket No. 1), as a 2005 Wisconsin conviction for "Aggravated Battery Intent – Great Harm." During Defendant's plea hearing, the conviction was identified as "substantial battery, intended bodily harm." (uncertified Transcript of plea hearing, p. 23.) Defendant now contends that his ACCA sentence should be vacated because he was never convicted of "aggravated battery," but only "substantial battery." This argument is summarily rejected for two reasons. First, the conviction that Defendant acknowledged at his plea hearing – substantial battery – is itself a "violent felony" for ACCA purposes. See United States v. Bradford, 766 F.Supp.2d 903,

15

906 (E.D.Wis. 2011) ("substantial battery under Wis. Stat. § 940.19(2) is a violent felony"). Therefore, any erroneous reference to "aggravated battery," rather than "substantial battery," would have no consequential effect on Defendant's ACCA status. Second, even if the conviction at issue were not countable as a violent felony, Defendant still would qualify as an Armed Career Criminal because he has at least three other convictions that are violent felonies for ACCA purposes. (In fact, Defendant has many more than just three other such convictions.)

### III. MOTION FOR APPOINTMENT OF COUNSEL

Defendant has filed a motion asking the Court to appoint counsel to represent him in connection with his current § 2255 motion. (Docket No. 92.) He argues that "[d]ue to all the grounds raised" in the motion, "and the new case law that has just come out counsel is needed." A federal court can appoint counsel to represent an indigent defendant in a § 2255 proceeding if "the interests of justice so require," (18 U.S.C. § 3006A(a)(2)(B)), but there is no constitutional or statutory right to counsel in post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 556 (1987). The decision as to whether counsel should be appointed in a federal post-conviction proceeding is purely discretionary, (unless an evidentiary hearing is required). United States v. Degand, 614 F.2d 176, 178 (8th Cir. 1980).

Here, the Court can find no good reason to appoint an attorney to represent Defendant. It is true that Defendant's § 2255 motion raises numerous grounds for relief, but none of those grounds has any potential viability. Defendant's claims are not being denied because they were inartfully presented; they are being denied because they are plainly without merit. The Court finds that appointment of counsel would not provide any meaningful assistance to Defendant or to the Court. Therefore, Defendant's motion for appointment of counsel will be denied.

**IV. CERTIFICATE OF APPEALABILITY**

A federal prisoner may not appeal a final order in a proceeding under § 2255, without first securing a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(B). Federal district courts cannot grant a Certificate of Appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (emphasis added); see also Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

A Certificate of Appealability will not be granted simply because the appeal is pursued in good faith and raises a non-frivolous issue. See Kramer v. Kemna, 21 F.3d 305, 307 (8th Cir. 1994) ("[g]ood faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253"). Instead, the prisoner must satisfy a higher standard, showing that the issues to be raised on appeal are debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise warrant further review. Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir.), cert. denied, 513 U.S. 946 (1994) (citing Lozado v. Deeds, 498 U.S. 430, 432, (1991) (per curiam)); see also Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

The Court's resolution of Defendant's current § 2255 claims is not "debatable among reasonable jurists." Flieger, 16 F.3d at 882-83. It is extremely unlikely that any court, including the Eighth Circuit Court of Appeals, would decide Defendant's claims differently than they have been decided here. This case does not present any legal issues that warrant appellate review. Therefore, Defendant is not entitled to a Certificate of Appealability in this matter.

Based upon the foregoing, and all of the files, records and proceedings herein,

**IT IS HEREBY ORDERED that**:

17

1. Defendant's motion for post-conviction relief under 28 U.S.C. § 2255, (Docket No. 90), is **DENIED WITH PREJUDICE**;

2. Defendant's motion for appointment of counsel, (Docket No. 92), is **DENIED**; and

3. Defendant will **NOT** be granted a Certificate of Appealability.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April  21 , 2014

        s/Richard H. Kyle
        RICHARD H. KYLE
        United States District Court Judge